No. 17,192.

MONTGOMERY WARD AND COMPANY *v.* INDUSTRIAL
COMMISSION ET AL.

(263 P. [2d] 817)

Decided November 16, 1953. Rehearing denied December 14, 1953.

Mr. DARWIN D. COIT, for plaintiff in error.

Mr. DUKE W. DUNBAR, Attorney General, Mr. FRANK A. WACHOB, Deputy, Mr. PETER L. DYE, Assistant, for defendant in error Industrial Commission, Messrs. WATTS & WATTS, for defendant in error Nelson.

*En Banc.*

MR. JUSTICE CLARK delivered the opinion of the court.

THIS is a workman's compensation case wherein Ethel

Mae Nelson, to whom we hereinafter refer as claimant, procured an award for an injury sustained by her while employed by plaintiff in error, hereinafter designated as employer, which is self-insured.

The claim is based upon an injury allegedly sustained by claimant when she fell from a defective ladder on January 17, 1952, while employed as a saleslady in the store of Montgomery Ward and Company, located at Durango, Colorado. The first hearing was had before a referee of the Industrial Commission at Durango on June 10, 1952, when the testimony of claimant and several other witnesses, was taken. At the conclusion of the Durango hearing, counsel for both claimant and employer, having stated that they wished an opportunity to present medical testimony, the referee announced a continuance of the case until further medical examination of claimant could be made. He also directed claimant to submit herself for examination to such doctors as the employer might request.

In compliance with the request of Mr. Sherman, a representative of the employer in charge of insurance, claimant came to Denver on June 17th and submitted herself to examination by Dr. Gunderson, Dr. Stanfield, and Dr. Freed, selected by the employer to examine claimant on its behalf.

July 18 Mr. Sherman transmitted to the Commission two copies each of the written reports of Dr. Freed and Dr. Stanfield, and on July 21, two copies of the written report of Dr. Gunderson. July 23 the referee requested the employer to notify him within ten days if it wished to bring any of the three doctors above named for direct testimony or, "if you wish the reports made a part of the file and an appropriate order entered." The same day the referee notified claimant's counsel that if he did not hear from him to the contrary within ten days the reports of the three doctors would be made a part of the file and an appropriate order entered thereon. In response to the letter of the referee, Mr. Sherman stated

that the employer wished to present the three doctors for direct testimony at a hearing to be held in Denver, while attorneys for claimant wrote that they would not desire to cross-examine said doctors.

After this exchange of correspondence the matter was set for further hearing before the referee at Denver on August 20th. The claimant did not appear at this hearing either in person or by counsel. Employer appeared by counsel. Dr. Freed was sworn as a witness, testified briefly, and his previous written report together with that of Dr. Stanfield were marked as exhibits and formally offered and received in evidence. Dr. Gunderson was not called, nor was his report formally offered in evidence.

The referee on September 2, 1952, filed his findings and order wherein he found "from the evidence that claimant did sustain an injury to her head in an accident rising out of and in the course of her employment" on January 17, 1952; that on account thereof she was forced to quit work on January 22nd; "that claimant is now suffering from a central nervous system lesion and that she is partially paralyzed. The referee further finds from the evidence that claimant had no such disorder prior to the accident of January 17, 1952 and that the evidence before the Referee is insufficient to find the claimant was suffering from a stroke or paralysis at the time of the accident or prior thereto." He further found that claimant had sustained permanent partial disability equal to twenty-five per cent as a working unit, and thereupon ordered the payment of compensation, fixing the amount thereof.

November 16 the Commission, upon review, entered its order approving, affirming and adopting the order of the referee as the order of the Commission, and, upon further review, entered its supplemental order November 21 affirming its award of November 16. Thereupon, action was filed in the district court in and for the City and County of Denver and after hearing, the trial judge

entered an order and judgment on June 12, 1953, wherein he found that "there is evidence to support the findings and award of the commission," and entered judgment dismissing plaintiff's action. The matter now is before us by writ of error to review that judgment.

As specifications of grounds upon which it is contended the judgment of the trial court should be reversed, counsel for the employer reasserts practically the same contentions as theretofore made before the Commission and before the trial court, namely, (1) That there was no evidence before the Commission to show that claimant sustained a disabling injury; that the symptoms she detailed were attributable to any injury so sustained by her; that she was forced to quit work as a result of an accident; that she sustained any permanent partial disability or that she is entitled to any compensation benefits; (2) that the only competent evidence in the record showed the claimant to have sustained some temporary disability by reason of a stroke not connected with the alleged accident; (3) that the findings made by the referee and the Commission do not support their orders.

A study of the foregoing specifications and supporting arguments, in conjunction with the record in this case, narrows the issue practically to the contention of employer's counsel that there is no material, competent evidence in the record from which the resultant effects of claimant's accident may be determined other than the testimony of employer's witness, Dr. Freed. It is contended that this witness testified positively that whatever disability claimant sustained was due to her having suffered a stroke and that the stroke was not induced by the accident upon which she bases her claim. It is somewhat difficult to wholly reconcile Dr. Freed's testimony under oral examination August 20 (without being cross-examined) wherein he stated that, in his opinion, the claimant had had a small stroke in the hind part of the brain, and that same had no causal connection with the accident

which befell her on January 17, 1952, with his written report appearing in the record as Exhibit No. 1. In this report Dr. Freed stated, under the heading entitled "conclusions," that, "In my opinion, this claimant sustained a vascular lesion (stroke) in the hind part of the brain at the time of the accident of January 17, 1952, or shortly thereafter. It is impossible to state whether the injury caused this to develop or whether the stroke caused the fall."

■ Did the injury resulting from the fall cause the lesion to develop or did the stroke occuring while claimant was on the ladder cause her to fall? Is the Commission bound by the oral testimony of Dr. Freed, or may it look elsewhere in this record in an attempt to reconcile the the apparent conflict in evidence? Dr. Gunderson's report was not formally offered in evidence and it is contended that the Commission should not have considered it. With this we cannot agree. Dr. Gunderson was the employer's witness. The reason that an order making his written report a part of the case was not entered, was that the employer's representatives stated to the referee that they wished to present the doctor for oral examination at the hearing to be held in Denver. This they did not do. Claimant's counsel already had waived the cross-examination of this witness. Certainly no surprise can be claimed in the consideration of the Gunderson report by the Commission. "The petitions apparently overlook the fact that they did not raise any objection to the reception of Dr. Long's report by the commission and did not take any exceptions thereto, and that in fact this report was received in evidence in response to their direct request and suggestion, and further that the petitioners did not in any manner seek to have Dr. Long appear before the commission and give his testimony and evidence in the mode provided by law. We think that under these circumstances the petitioners both consented to the introduction of the report by Dr. Long and waived any proper objections that they may have had thereto." *Joy, et al.*

*v. State Industrial Commission,* 182 Okla. 1, 75 P. (2d) 1120, 1123. We adopt the above-quoted language and rule, substituting "employer" for "petitioners" and "Dr. Gunderson" for "Dr. Long."

In this instance we need not construe the statute, which goes so far as to say that, "The commission may receive as evidence and use as proof of any fact in dispute * * * Reports of attending or examining physicians." Section 373, chapter 97, '35 C.S.A.

It is contended that the Gunderson report, if considered, is insufficient in, that therein Dr. Gunderson does not precisely state that the disability found by him was caused by the accident. This contention is of slight importance since it was to determine the effect of the accident that Dr. Gunderson was requested by the employer to examine claimant and make report of his findings. In the concluding paragraph of his report he says: "This woman apparently has a central nervous system lesion. Her main complaints, at the present time, are with the left lower extremity and headaches. I believe she had a left hemiplegia which has not fully recovered." He finds the extent of disability to be twenty per cent, not taking into account the effect of headaches and loss of balance. Dr. Freed placed the extent of disability at twenty-five per cent in his report.

 From a study of this entire record it cannot logically be concluded, when considered in the light of all of the evidence, much of which is undisputed, that it is not a reasonable inference that the injury sustained by claimant from the accident produced or precipitated the partial paralysis found by the referee to exist, or if not wholly responsible for that condition, that it was contributory thereto. "Compensation is not dependent on the state of an employee's health or his freedom from constitutional weakness or latent tendency." *Peter Kiewit Sons' Company v. Industrial Commission,* 124 Colo. 217, 220, 236 P. (2d) 296. There is no denial that claimant suffered a nasty fall from a defective ladder while

engaged in the performance of her duty while in the service of her employer, and arising out of and in the course of her employment. Immediately following this accident, aside from being badly shaken and having a pain in the back of her head and neck, she did not feel that she had been seriously injured. Shortly thereafter, however, she suffered severe headaches and nausea, vomiting five or six times a day, and within a day or two after the accident, her locomotion and balance became impaired and she had a feeling of falling forward. Dr. Freed states in his report that, "she had a hematoma in the right occipital region," meaning a swelling containing blood at the base of the skull or the top of the column on the right side. She struck the back of her head against a partition when she fell. Prior to the fall none of these things had been manifest.

██ ██ Counsel for employer contend, however, that the above detailed claims of injury are unsupported by competent evidence for the reason that claimant is not properly qualified to testify concerning the effects of her fall. Who else would know better to say how she felt after this shattering experience? She did not attempt to testify as an expert, and it is always proper for a claimant to testify as to his general health and feeling immediately preceding and succeeding an accident, to the end that comparison may be made and the extent of the injury evaluated. *International Coal and Mining Co. v. Industrial Commission,* 293 Ill. 524, 127 N.E. 703, 10 A.L.R. 1010; *Hardwood Sales Co. v. Meeks,* 286 Ky. 500, 151 S.W. (2d) 406. Besides, "We think the commission was entitled to consider all admitted and self-evident facts in the case, and apply to these * * * the common knowledge of common men in this state." *White v. Industrial Commission,* 104 Colo. 372, 374, 90 P. (2d) 960.

Under the title of "Injuries Received" Dr. Freed, in his report, stated that claimant had a swelling containing blood (hematoma) in the right occipital region. Dr. Gunderson gave as his opinion that she had suffered a

"hemiplegia," which in Webster's International Dictionary, is defined as "Paralysis of one lateral half of the body or part of it, as the left arm, trunk, and leg. It *results from injury* (as hemorrhage) to the motor cortex of the pyramidal tract of the central nervous system." (Emphasis supplied.)

■ Where there was sufficient competent evidence before the Commission from which deductions could be made and inference drawn which support the findings of the Commission, the fact that there is testimony to the contrary does not justify a vacation of the findings of the Commission. *Rand v. Industrial Commission,* 110 Colo. 240, 246, 132 P. (2d) 784.

■ Where the evidence is such that honest men fairly considering it might arrive at contrary conclusions, the findings of the Commission in resolution thereof are binding, not only upon the district court, but likewise on this court upon review. *Regal Coal Co. v. Jackvich,* 105 Colo. 479, 483, 99 P. (2d) 196; *Industrial Commission v. Day,* 107 Colo. 332, 334, 111 P. (2d) 1061; *Zuzich v. Leyden Lignite Co.,* 120 Colo. 21, 206 P. (2d) 833.

"If the evidence, and the logical inference therefrom, can be said to warrant a conclusion that the accident, within a reasonable probability, resulted in the disability, the claimant is entitled to compensation, since he was successful before the commission. If, however, the evidence, as a matter of law is insufficient to remove the question of causation from the realm of conjecture and mere possibilities, the award of the commission cannot be upheld." *Industrial Commission v. Royal Indemnity Co.,* 124 Colo. 210, 214, 236 P. (2d) 293. From a review of the record in this case, we are unable to say that as a matter of law the findings of the Commission are based upon conjecture and mere possibility. It is our conclusion that there was ample evidence to support the Commission in its findings of liability and this finding we cannot disturb.

With respect to the contention that the findings of the Commission do not support its award, we need add to what we already have said, only, that while the findings are not expressed with that degree of clarity desirable, they must be considered in the light of the evidence in the case, and where the award is justified, it may not be set aside on the technicality of unclarity of expression on the part of the Commission and its officers.

The judgment is affirmed.